FILED

10 JUL 30 PM 12:56

CAROL EWING
COUNTY & CIRCUIT CLERK
GRANT COUNTY, ARKANSAS

_____KDP_____ DC

IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS
CIVIL DIVISION

JERRY K. DAVIS, AS ADMINISTRATOR OF
THE ESTATE OF JOHN TANNER DAVIS,
DECEASED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAINTIFF

VS. CV-2010-145-1

CONTECH CONSTRUCTION PRODUCTS, INC.,
A CORPORATION; PORT CITY TRUCKING,
INC., A CORPORATION; BRUCE E. LICK,
INDIVIDUALLY,

FICTICIOUS DEFENDANTS, 1, 2, 3, 4, 5, THOSE PERSONS,
FIRMS OR CORPORATIONS OR OTHER LEGAL ENTITIES
RESPONSIBLE FOR ARRANGING, PACKAGING,
LOADING, SECURING, INSPECTING AND SHIPPING OF THE PIPE
WHICH IS THE SUBJECT MATTER OF THIS LAWSUIT; ALL OF
SAID FICTITIOUS PARTIES ARE UNKNOWN TO PLAINTIFFS
AT THIS TIME AND WILL BE ADDED BY AMENDMENT WHEN
ASCERTAINED; FICTITIOUS DEFENDANTS 6, 7, 8, 9, 10, THOSE
PERSONS, FIRMS OR CORPORATIONS OR OTHER LEGAL
ENTITIES WHOSE NEGLIGENCE, WANTONNESS, RECKLESSNESS,
WILLFULNESS, OR OTHER WRONGFUL CONDUCT CAUSED
THE DEATH OF JOHN TANNER DAVIS, ALL OF
SAID FICTITIOUS PARTIES ARE UNKNOWN TO PLAINTIFFS
AT THIS TIME AND WILL BE ADDED BY AMENDMENT WHEN
ASCERTAINED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DEFENDANTS

## COMPLAINT

Comes now the Plaintiff, and for his cause of action against the Defendants herein, states as follows:

### STATEMENT OF THE PARTIES

1. Plaintiff, Jerry K. Davis, is over the age of nineteen (19) years and is a resident and citizen of Grant County, Arkansas. Plaintiff alleges that Jerry K. Davis and Larenda Davis

-1-

are the natural father and mother of John Tanner Davis, deceased. Plaintiff alleges that John Tanner Davis is the only child of their marriage. Plaintiff Jerry K. Davis is Administrator of the Estate of John Tanner Davis, pursuant to the laws and procedures of the Grant County Circuit Court of the State of Arkansas.

2. Defendant Contech Construction Products, Inc., is upon information and belief a corporation incorporated in the State of Ohio with its principle place of business in the State of Ohio and maintains a Division of the Company in Greenville, Mississippi.

3. Defendant Port City Trucking, Inc., is upon information and belief a corporation, incorporated in the State of Mississippi with its principle place of business in Greenville, Mississippi.

4. Defendant Bruce E. Lick, is over the age of nineteen (19) years and is a resident citizen of the State of Mississippi.

5. Fictitious defendants 1, 2, 3, 4, 5, those persons, firms or corporations or other legal entities responsible for arranging, packaging, loading, securing, inspecting and shipping of the pipe which is the subject matter of this lawsuit; all of said fictitious parties are unknown to plaintiff at this time.

6. Fictitious defendants, 6, 7, 8, 9, 10, those persons, firms or corporations or other legal entities whose negligence, wantonness, recklessness, willfulness or other wrongful conduct caused the death of John Tanner Davis, all of said fictitious parties are unknown to plaintiffs at this time.

-2-

## JURISDICTION

7. The incident forming the basis of this lawsuit occurred in Grant County, Arkansas. Jurisdiction and venue are proper in this Court.

## STATEMENT OF THE CASE

8. Plaintiff alleges that on October 23, 2009, John Tanner Davis was fatally injured when struck by metal corrugated pipe which fell from a trailer on the premises of Sheridan Excavating, Inc., located in Sheridan, Arkansas. Plaintiff alleges that the metal pipe which struck John Tanner Davis was purchased by Sheridan Excavating, Inc. from a Division of Defendant Contech Construction Products, Inc. located in Greenville, Mississippi. Plaintiff alleges that the defendant Contech Construction Products, Inc. loaded and shipped the metal pipe on a Port City Trucking, Inc. tractor trailer truck which delivered the pipe to the premises of Sheridan Excavating, Inc. in Sheridan, Arkansas.

9. Plaintiff alleges that Defendant Port City Trucking, Inc. was the delivering carrier which transported the metal pipe to the premises of Sheridan Excavating, Inc. in Sheridan, Arkansas.

10. Plaintiff alleges that Defendant Bruce E. Lick was the driver of the tractor trailer truck owned and operated by Defendant Port City Trucking, Inc. upon which the metal pipe was loaded. Plaintiff further alleges that Defendant Bruce E. Lick at the time of the accident made the basis of this suit was the agent, servant and employee of Defendant Port City Trucking, Inc. acting within the line and scope of his employment.

-3-

## COUNT ONE

11. Plaintiff realleges the allegations of all previous paragraphs of the Complaint as if set out here in full.

12. At the aforementioned times and places, defendants, named and fictitious, were under a duty and/or assumed the duty to safely arrange, package, load, secure, inspect and ship the pipe materials on the tractor trailer truck in such a manner that the load of pipe would not be at risk of rolling off or otherwise falling on persons working or walking near the trailer during the unloading process.

13. Plaintiff alleges that Defendant Contech Construction Products, Inc. was at all times referred to herein responsible for the proper and safe arranging, packaging, loading, securing, inspection and shipment of the metal pipe to Sheridan Excavating, Inc. in such a manner as to prevent the pipe from rolling or falling off the trailer during the unloading process. Plaintiff further alleges that Defendant Contech Construction Products, Inc. failed to load and secure the tractor trailer truck in such a manner that articles of cargo which are likely to roll, such as metal pipe, were properly arranged, packaged and restrained by the use of chocks, wedges, a cradle or other equivalent means to prevent the pipe from rolling or falling off the trailer during the unloading process. Plaintiff further alleges that Defendant Contech Construction Products, Inc. failed to warn or issue a safety alert or instructions that no chocks or wedges were used to restrain or block the pipe on the trailer.

14. Plaintiff alleges that at all times referred to herein Defendant Port City Trucking, Inc. was responsible for safely transporting and delivering the load of metal pipe to the premises of Sheridan Excavating, Inc. in Sheridan, Arkansas. Plaintiff further alleges that Defendant Port

-4-

City Trucking, Inc. failed to properly inspect the load to insure that the pipe was properly distributed on the trailer and was properly restrained by the use of chocks, wedges, a cradle or other equivalent means so as to prevent the pipe from rolling or falling off the trailer during the unloading process. Plaintiff further alleges that Defendant Port City Trucking, Inc. was under a duty to reject and refuse to transport a load of pipe which was not properly distributed on the trailer or properly restrained by the use of chocks, wedges, a cradle or other equivalent means so as to prevent the pipe from rolling or falling off the trailer.

15. Plaintiff alleges that at all times referred to herein Defendant Bruce E. Lick as the driver/operator of the Port City Trucking, Inc. tractor trailer was responsible for inspecting the load of pipe to insure it was properly distributed on the trailer and was properly restrained and secured for safe transportation on interstate highways. Plaintiff further alleges that Defendant Bruce E. Lick removed the nylon strapping securing the load to the trailer without insuring that chocks or wedges were in place on all four corners of the wooden boards separating the pipe to block or restrain the pipe on the trailer prior to unloading. Plaintiff further alleges that Defendant Bruce E. Lick failed to warn persons unloading the pipe (to include John Tanner Davis) that the shipment of pipe was not safe for unloading because the pipe was not properly chocked or wedged so as to prevent the pipe from rolling and falling off the trailer once the nylon straps and metal bands had been removed.

16. Plaintiff alleges that as a direct and proximate cause of the Defendants' negligence, wantonness, reckless and/or willful conduct John Tanner Davis was struck by pipe falling from the trailer thereby inflicting upon him such injuries that he died.

-5-

17. There was left surviving JOHN TANNER DAVIS his parents, Jerry K. Davis and Larenda Davis, who are entitled to recover damages herein, and for whose benefit said action is brought.

18. At the time of his death, JOHN TANNER DAVIS was in good health and gainfully employed. His statutory beneficiaries have suffered and will continue to suffer mental anguish, grief, emotional pain as well as the loss of the companionship of JOHN TANNER DAVIS. In addition, the Plaintiff has incurred funeral expenses in burying his son.

19. In addition to the above damages, as a further direct and proximate result of the negligent, wrongful and willful misconduct of the Defendants and their wanton disregard for safety, JOHN TANNER DAVIS was caused to suffer damages including, but not limited to, pain and suffering, mental anguish, loss of enjoyment of life, and death, for which the duly appointed Personal Representative is entitled to recover damages herein.

20. The aforementioned failures, acts, omissions, negligent conduct and fault have resulted in and proximately caused damages, the full extent of which have yet to be determined and will, by necessity, be determined by a jury, yet all such damages are far in excess of the minimum jurisdictional requirements of diversity jurisdiction for federal court.

## COUNT TWO

21. Plaintiff realleges the allegations of all previous paragraphs of the Complaint as if set out here in full.

22. At the aforementioned times and places, defendants, named and fictitious negligently, recklessly, wantonly, and/or willfully acted in such a manner, or failed to act, so as to

-6-

cause pipe to fall from a trailer while being unloaded by John Tanner Davis inflicting upon him such injuries that he died.

23. As a direct and proximate cause of the negligence, reckless, wanton, and willful actions and/or omissions of Defendants named and fictitious, John Tanner Davis received such injuries that he died, and punitive damages should be assessed against the Defendants in an amount sufficient to punish the Defendants and deter others from such future reckless conduct, an amount that should properly be left to the sound discretion of the jury.

### ALLEGATIONS RELATED TO THE UNCONSTUTIONALITY OF ACT 649 ENACTED BY THE ARKANSAS GENERAL ASSEMBLY AND MORE COMMONLY REFEREED TO AS THE ARKANSAS CIVIL JUSTICE REFORM ACT OF 2003

24. On or about March 25, 2003, Act 649 arising from the Arkansas General Assembly was enacted, and, if constitutional, became the law of Arkansas.

25. Act 649 is entitled, "An Act to Provide Comprehensive and Uniform Civil Justice Reform; and for Other Purposes," and is subtitled, "The Civil Justice Reform Act of 2003."

26. In Section 26 of Act 649, an Emergency Clause relating to when the Act would take effect, the legislature found that limiting the recovery of plaintiffs in certain actions for personal injury and wrongful death was necessary in order to accomplish certain legislative goals.

27. None of the goals addressed in the Emergency Clause is a compelling state interest.

28. Act 649 was passed with the purpose and intent of decreasing the amount of recovery in certain actions for injury to person and in certain actions for wrongful death.

-7-

29. Act 649 has the effect of decreasing the amount of recovery in certain actions for injury to person and in certain actions for wrongful death.

### Limitations on Joint and Several Liability

30. In actions for personal injury, medical injury, property damage, or wrongful death, Section 1 of Act 649 eliminates joint liability; Sections 3 and 5 of the Act restore joint liability in certain situations, notwithstanding the provisions of Section 1.

31. Section 2 of Act 649 requires the fact finder to consider, when assessing percentages of fault, fault of all persons who contributed to the injury, whether the person is or could have been made a party to the action.

32. Section 2 of Act 649 requires that notice of nonparty liability, asserted on any basis other than the nonparty having settled with a plaintiff, be raised by filing a pleading in the existing proceeding.

33. Section 2 of Act 649 bars the use of any finding of nonparty liability as evidence of nonparty liability.

34. Section 2 of Act 649 requires the courts of Arkansas to adjudicate the responsibilities of parties not before the court, without the benefit of adversary presentations from the non-parties.

35. Section 3 of Act 649 permits a plaintiff to establish and a court to find that the several share of liability of one of multiple defendants is not "reasonably collectible," and upon such finding to re-allocate the non-collectible share among remaining defendants.

36. Section 3 of Act 649 permits the re-allocation of less that the full amount of the non-collectible share.

-8-

37. Section 3 of Act 649 does not restore to plaintiff the same opportunity to recover damages from tortfeasors as existed prior to the enactment of Act 649.

38. Act 649 operates, notwithstanding Section 1, to impose joint and several liability on persons who enter into a conscious agreement to pursue a common plan or design to commit an intentional tort.

39. Act 649 does not restore to plaintiff the same opportunity to recover damages from tortfeasors as existed prior to the enactment of Act 649.

### Limitations on Punitive Damages

40. Section 9 of Act 649 requires a plaintiff, in order to recover punitive damages, to prove liability for compensatory damages and at least one of two aggravating factors.

41. Section 10 of Act 649 requires a plaintiff, in order to recover punitive damages, to prove the elements of Section 9 by clear and convincing evidence.

42. Sections 9 and 10 of Act 649 alter existing standards for recovering punitive damages.

43. Sections 9 and 10 of Act 649 increase the burden a plaintiff must bear to establish entitlement to punitive damages.

44. Section 11 of Act 649 provides that, except in certain cases of intentional misconduct, "a punitive damages award shall not be more than "the greater of a) $250,000 or, b) three times the amount of compensatory damages, not to exceed $1,000,000, with the monetary amounts to be adjusted periodically according to the Consumer Price Index.

45. Section 14 of Act 649 requires, upon request of any party, the court to bifurcate proceedings related to compensatory and punitive damages.

46. Section 14 of Act 649 bars, during the compensatory phase of the bifurcated proceeding, admission of "Evidence of the financial condition of the defendant and other evidence relevant only to punitive damages."

47. Section 14 of Act 649 bars, during the compensatory phase of the bifurcated proceeding, evidence relevant to the determination of compensation.

48. Section 14 conflicts with rules of this Court governing the administration of trials.

### Limitations on Joint and Several Liability

49. Sections 1-5 of Act 649, collectively and in constituent parts, violate Article V Section 32, as amended by Amendment 26, of the Arkansas Constitution.

50. Sections 1-5 of Act 649, collectively and in constituent parts, violate the constitutional requirement of separation of powers, Article IV, Sections 1,2.

51. Section 2 of Act 649 purports to vest the courts of Arkansas with authority to adjudicate disputes with non-parties, in violation of Article II, Sections 13 and 21; Article IV, Sections 1 and 2; and Article VII of the Arkansas Constitution.

52. Section 4 of Act 649 purports to grant special immunities to one class of persons, in violation of Article II Sections 3, 13, 18, and 21 and Article V Section 25 of the Arkansas Constitution.

### Limitations on Punitive Damages

53. Sections 9-14 of Act 649, collectively and in constituent parts, violate Article II, Sections 4, 7, 13, and 21; Article V Section 32, as amended by Amendment 26; and Article IV, Sections 1 and 2, of the Arkansas Constitution.

### JURY DEMAND

54. Plaintiff demands a trial by jury.

WHEREFORE, the Plaintiff prays for judgment against all Defendants, jointly and severally, or as otherwise provided for by Arkansas law, with the Plaintiff reserving the right to challenge the constitutionality of Act 649 of the Regular Legislative Session of 2003, *in toto*, for compensatory damages as the proof may establish, but in any event damages far in excess of the minimum jurisdictional requirements of this Court or any court with Federal Diversity Jurisdiction, for costs herein expended, for punitive damages sufficient to punish the Defendants and to deter others from similar conduct, and for all other legal and proper relief.

Respectfully submitted,

JERRY K. DAVIS, Administrator of the Estate of
John Tanner Davis, Deceased

*/s/ R. Margaret Dobson*
R. Margaret Dobson, AR Bar No.: 99111
Dobson Law Firm, P.A.
206 South Main
P.O. Box 459
Sheridan, Arkansas 72150
(870) 942-0820

AND

Paul Byrd, AR Bar No.: 85020
Hare, Wynn, Newell & Newton, LLP
4220 N. Rodney Parham Rd., Suite 250
Little Rock, AR 72212
(501) 225-5500

## AFFIDAVIT

Comes now the undersigned and solemnly swears that the following facts and information are true and correct to the best of my knowledge and belief:

1. I am the attorney for the Plaintiff in the attached pleading.

2. Neither I nor my client knows the identities of the John and Jane Doe designations set forth in the pleading.

3. Upon determining the identity of the unknown parties responsible for the injuries and damages sustained by Plaintiff, I will timely amend the Complaint to specifically designate the names of the unknown parties.

4. This Affidavit is filed in accordance with Ark. Code Ann. § 16-56-125.

_R. Margaret Dobson_

## VERIFICATION

STATE OF ARKANSAS  )
COUNTY OF GRANT    )

I, R. Margaret Dobson, state upon oath that the facts and allegations contained in the foregoing Affidavit of Service are true and correct to the best of my knowledge, information, and belief.

_R. Margaret Dobson_

SUBSCRIBED AND SWORN TO before me, a Notary Public, on this 30th day of July, 2010.

_Sheila Emerson_
Notary Public

My Commission Expires:
8-30-19

-12-